# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| David Elgersma, | Case No. 21-cv-1792 (KMM/DJF) |
| Plaintiff, | |
| v. | **ORDER** |
| City of Saint Paul, Lynette Cherry, Christopher Hansen, and Heather Weyker, in their official and individual capacities, | |
| Defendants. | |

This action arises from events in which three St. Paul police officers arrested Plaintiff David Elgersma in his apartment building after using a maintenance worker to deceive him into opening the door. Mr. Elgersma brought claims under 42 U.S.C. § 1983 against the three officers—Defendants Sergeant Lynette Cherry, Officer Christopher Hansen, and Sergeant Heather Weyker—and the City of St. Paul for an unconstitutional search, entry, and arrest. He also brought state-law tort claims against the City and the officers for battery, trespass, false arrest, and imprisonment. Mr. Elgersma moved for partial summary judgment on his § 1983 claims. The defendants moved for summary judgment on all claims, asserting that they are entitled to qualified immunity from the § 1983 claims and official immunity from the state-law claims. For the reasons discussed below, Mr. Elgersma's motion is **GRANTED**, and the defendants' motion is **DENIED**.

I.   **BACKGROUND**

On July 11, 2019, St. Paul Police Department officers Sgt. Weyker, Sgt. Cherry, and

Officer Hansen arrived at Mr. Elgersma's apartment building in plain clothes to arrest him for a nonviolent felony under a probable cause pickup order.[1] (Pl. Mot. Summ. J. 1- 2, ECF No. 18.)

### A. The Ruse

When the officers arrived at Mr. Elgersma's apartment building, they met and spoke with the leasing manager. Because the officers lacked a warrant to enter his apartment, they wanted Mr. Elgersma to open the door so that they could arrest him. (*Id.* at 2.) Sgt. Cherry, the leasing manager, and the building's maintenance worker brainstormed ways to entice Mr. Elgersma to open his door. (*Id.* at 2-3.)

The leasing manager suggested that the maintenance worker could knock on the door and pretend that there was a water leak. (*Id.*) The officers agreed to this plan. (*Id.* at 3.) The maintenance worker accompanied the three officers to Mr. Elgersma's unit, knocked on the door, and lied about a water leak in the apartment below. (*Id.* at 4.) As a result of this deception, Mr. Elgersma opened the door. (*Id.*) There is no dispute that this was the only reason Mr. Elgersma opened the door. (*Id.*)

### B. The Subsequent Entry, Arrest, and Search

As soon as Mr. Elgersma opened the door, the officers brushed past him and entered his apartment. (*Id.* at 4-5; *see also* Decl. of Tim Phillips Ex. 2 (Sgt. Christopher Hansen Body-Worn Camera Footage) 24:37-25:07, ECF No. 20-2 (hereinafter "Hansen

---

[1] This is a department bulletin instructing officers to apprehend a specific individual based on one officer's belief that there is probable cause that the person committed a crime.

2

BWC.") Body camera footage shows Mr. Elgersma standing three to four feet inside his apartment when he opened the door and when the officers entered his apartment. (Hansen BWC 24:37-25:07.)

The officers did not announce themselves as police when they entered the apartment. (Pl. Mot. Summ. J. 5, ECF No. 18.) Instead, they entered without permission, and then asked if they could chat with Mr. Elgersma after they were already inside his apartment. (*Id.*) Subsequently, Sgt. Cherry and Sgt. Weyker handcuffed Mr. Elgersma, and Sgt. Cherry searched him. (*Id.* at 6; Def. Mot. Summ. J. 4, ECF. No. 27.) After the pat down, the officers conducted a cursory search of Mr. Elgersma's apartment. (Pl. Mot. Summ. J. 13, ECF No. 18.)

It is undisputed that the officers lacked consent, an arrest warrant, or exigent circumstances to arrest Mr. Elgersma. (*Id.* at 10.) The defendants concede as much in their briefing. (*See* Def. Mot. Summ. J. 1.)

As for what the officers subjectively knew, Sgt. Weyker and Officer Hansen both acknowledged in their depositions that they knew that without consent or exigent circumstances, it was unlawful to enter someone's apartment without a warrant.(Pl. Mot. Summ. J. 7.) They also knew that a warrant is required to arrest someone in their home and admitted that they did not have one. (*Id.*) On the other hand, Sgt. Cherry believed it was lawful to enter someone's apartment absent consent or exigent circumstances, and without a warrant, provided that officers had a probable cause pickup order. (*Id.* at 7-8.) Sgt. Cherry also believed it was permissible to enter Elgersma's apartment "as long as" he came to the door, regardless of why, and even if he remained well inside the apartment. (*Id.* at 7.)

3

**II.   ANALYSIS**

Mr. Elgersma contends that he is entitled to summary judgment because the officers violated his clearly established constitutional rights. The defendant officers respond that they are entitled to qualified immunity as to the federal claims and official immunity as to the state-law claims.

### A.  Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Dowden v. Cornerstone Nat'l Ins.Co.*, 11 F.4th 866, 872 (8th Cir. 2021). The moving party must demonstrate that the material facts are undisputed. *Celotex*, 477 U.S. at 322. A fact is "material" only if its resolution could affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When the moving party properly supports a motion for summary judgment, the party opposing summary judgment may not rest on mere allegations or denials, but must show, through the presentation of admissible evidence, that specific facts exist creating a genuine issue for trial. *Id.* at 256; *McGowen, Hurst, Clark & Smith, P.C. v. Com. Bank*, 11 F.4th 702, 710 (8th Cir. 2021). A dispute of fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Courts must view the inferences to be drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Irvin v. Richardson*, 20 F.4th 1199 (8th Cir. 2021). "Credibility determinations, the weighing of the evidence, and the drawing

of legitimate inferences from the facts are jury functions, not those of a judge." *Torgerson v. City of Rochester*, 643 F.3d 1013, 1042 (8th Cir. 2011) (en banc).

### B. Qualified Immunity

This Court first addresses the defendants' claim that summary judgment must be granted to them on the federal claims because they are entitled to qualified immunity. Qualified immunity protects public officials from suit "unless their conduct violates a clearly established right of which a reasonable official would have known." *Burnikel v. Fong*, 886 F.3d 706, 709 (8th Cir. 2018) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Whether an officer is entitled to qualified immunity in a particular case is a question of law. *Nelson v. County of Wright*, 162 F.3d 986, 989 (8th Cir.1998). A court must deny a defendant's summary judgment motion based on qualified immunity if: "(1) the evidence, viewed in the light most favorable to [the non-moving party], establishes a violation of a constitutional or statutory right, and (2) the right was clearly established at the time of the violation, such that a reasonable offic[er] would have known that his actions were unlawful." *Blazek v. City of Iowa City*, 761 F.3d 920, 922–23 (8th Cir. 2014). However, if either of those factors cannot be established, the defendants are entitled to qualified immunity, and the motion should be granted.

### C. Unconstitutional Arrest

Mr. Elgersma asserts that the officers violated his rights under the Fourth Amendment by entering his apartment without a warrant and arresting him inside the apartment in the absence of consent or exigent circumstances. The Court agrees, and finds both that the arrest was unlawful, and that its illegality was clearly established when it

5

occurred.

The Fourth Amendment generally prohibits warrantless arrests made without the suspect's consent or exigent circumstances. *Guite v. Wright*, 147 F.3d 747, 750 (8th Cir. 1998); *see also Schlothauer v. Robinson*, 757 F.2d 196, 197 (8th Cir. 1985). The Supreme Court has carved out an exception to this general rule, however, to permit a warrantless arrest if it was initiated in a public place, including on the threshold of a residence. *See United States v. Santana*, 427 U.S. 38, 43 (1976). In *Santana*, the officers saw the defendant standing in an open doorway and followed her into her house. *Id.* at 40-41. The Court held the warrantless arrest was constitutional because the arrest was "set in motion in a public place" and was not defeated by the defendant "escaping to a private place." *Id.* at 43.

Importantly, a trio of Eighth Circuit cases has interpreted *Santana*'s threshold exception and clarified that warrantless arrests are unconstitutional when deception is used to enter the home. First, in *Duncan v. Storie*, 869 F.2d 1100 (8th Cir. 1989), the Eighth Circuit held "a warrantless arrest that occurs *inside* an individual's home is unconstitutional unless the officers demonstrate the existence of probable cause and exigent circumstances." *Duncan*, 869 F.2d at 1102 (emphasis added). There, the plaintiff opened his door to the officers, believing they were there to pick up his written report about a different matter. *Id.* at 1101. He retreated into his home, however, when he realized the officers were actually there to arrest him for making an obscene phone call. *Id.* at 1103. The Eighth Circuit reasoned that "an individual who is compelled to stand in the doorway cannot be lawfully arrested without the existence of probable cause and exigent circumstances." *Id.* Critically, the Eighth Circuit specified that this standard applies "when officers deceive an

6

individual in order to bring him to the door." *Id.* The plaintiff in *Duncan* maintained that he remained inside his home when opening the door and speaking with the officers. *Id.* at 1101. When discussing the location of the plaintiff for purposes of the qualified immunity analysis, the Eighth Circuit advised it is "unwise to become preoccupied with the exact location of the individual in relation to the doorway" because what matters more is "whether that individual came to the doorway *voluntarily*." *Id.* (emphasis added).

The Eighth Circuit revisited these principles in *Mitchell v. Shearrer*, 729 F.3d 1070, (8th Cir. 2013). In *Mitchell*, the plaintiff refused the officers' request to come outside and tried to shut the door, at which point the officers dragged the plaintiff out onto his porch to arrest him. *Id.* In denying qualified immunity to the officers, the Eighth Circuit explained that the "relevant inquiry is whether the arrestee was in a public place 'when the police first sought to arrest'" him. *Id.* at 1075 (quoting *Santana*, 427 U.S. at 42). The plaintiff in *Mitchell* was unaware of the officers' intent to arrest him when he opened the door, and he was inside his home when he opened it. *Id.* The Eighth Circuit emphasized that "the crucial issues involve the individual's reasonable expectation of privacy and whether that individual came to the doorway voluntarily." *Id.* (quoting *Duncan*, 869 F.2d at 1102). Relevant here, the Eighth Circuit also noted that the plaintiff in *Mitchell* initially came to answer his door "voluntarily, without coercion or deceit by the law enforcement officers," *id.*, reiterating that a person cannot be lawfully arrested absent exigent circumstances when officers deceive him into opening the door.

Most recently, the Eighth Circuit reaffirmed these limitations on warrantless arrests in *United States v. Council,* 860 F.3d 604 (8th Cir. 2017). There, the Eighth Circuit granted

7

qualified immunity to the arresting officers because the plaintiff did not have an expectation of privacy in the doorway of his trailer and came to the threshold voluntarily. *Id.* at 611. The Eighth Circuit again made clear that coming to a public place by itself is not enough, and expressly qualified that the person being arrested "must have come to that public place voluntarily, without *coercion or deceit.*" *Id.* (emphasis added).

The *Duncan*, *Mitchell*, and *Council* trio of cases clearly establish that warrantless arrests made in the absence of consent or exigent circumstances violate the Fourth Amendment when police officers use coercion or deception to get a suspect to answer their door. Here, the defendant officers do not dispute that they used deception to entice Mr. Elgersma to the door of his apartment by instructing a maintenance worker to lie to him about a nonexistent water leak. Mr. Elgersma opened the door under false pretenses, unaware that he would be confronted instead by three plain-clothed police officers. Not only was this an unconstitutional arrest, but under *Duncan*, *Mitchell*, and *Council* its unlawfulness was clearly established.

Despite the *Duncan*, *Mitchell*, and *Council* line of authority from the Eighth Circuit, in an effort to defend their actions, the defendants instead rely on a few cases from the Minnesota Supreme Court that upheld warrantless arrests following *Santana*. However, a close read reveals that these decisions do not support a finding of qualified immunity here. The defendants lean heavily on *State v. Patricelli*, 324 N.W.2d 351 (Minn. 1982), a case in which officers entered the defendant's windowless porch and called the defendant to the doorway to initiate the arrest. *Id.* at 352. While it is true that the Minnesota Supreme Court upheld the warrantless arrest in *Patricelli,* in explaining its holding, the court underscored

8

that the officers "did not use any deception in obtaining defendant's presence at the open door." *Id.*

Similarly, in all of the other cases cited by the defendants, the Minnesota Supreme Court emphasized the voluntariness of the person opening the door. *See, e.g.*, *State v. Alayon*, 459 N.W.2d 325, 328 (Minn. 1990) (finding the defendant "freely chose to open the door and stood in the open doorway"); *State v. Howard*, 373 N.W.2d 596, 598–99 (Minn. 1985) (upholding the warrantless arrest because the defendant had been voluntarily cooperating with the officers before they came to his door, and he opened the door and stepped back for them, thus appearing to give them consent to enter); *see also State v. Mikkalson*, No. A07-2339, 2008 WL 5215866, at *3 n.2 (Minn. Ct. App. Dec. 16, 2008) (noting that although the officers did not use deception, the Minnesota Supreme Court has suggested that deception by the police invalidates an otherwise valid warrantless arrest). In this case, Mr. Elgersma opened his door only because of the officers' deceptive ruse. The Minnesota decisions relied upon by the defendants confirm rather than undermine the clear rule from the Eighth Circuit that a person can cannot be considered to have opened a door voluntarily when they do so due to the deception or coercion of officers.

A second reality further supports denial of qualified immunity in this case. Not only did the officers use deception to get Mr. Elgersma to open the door, but they entered the apartment to arrest him because he was not standing at its threshold. Although the officers claim Mr. Elgersma was standing in the doorway, the body camera footage shows that he was actually several feet inside the apartment, and was not standing in an open doorway like the suspect in *Santana*. *See Scott v. Harris*, 550 U.S. 372, 380–81 (2007) (instructing courts to

view facts in the light depicted by video recordings when parties tell two different stories, "one of which is blatantly contradicted" by the recording). In any event, this Court need not be preoccupied with Mr. Elgersma's "exact location." *Duncan*, 869 F.3d at 1102–03. But given his relative position, he would have a reasonable expectation of privacy when he opened the door. In sum, the Court concludes that Mr. Elgersma's constitutional rights were violated by his unlawful arrest, and qualified immunity is inappropriate in this case.[2]

### D. Unlawful Search and Entry

Because Mr. Elgersma's arrest was unconstitutional, the defendant officers' entry into and search of his apartment are also unconstitutional. To enter a person's home and conduct a search, police officers must have a search warrant, unless they have the person's consent or exigent circumstances are present. *United States v. Greer*, 607 F.3d 559, 563 (8th Cir. 2010) (citing *Payton v. New York*, 445 U.S. 573 (1980). As discussed above, the defendant officers did not have a warrant, obtain Mr. Elgersma's consent, or act under exigent circumstances when arresting Mr. Elgersma inside his home, so their entry into his home was also unlawful.

With respect to the search, it is lawful and reasonable for officers to conduct a

---

[2] The Eighth Circuit has recently called into serious question the constitutionality of arrests based on probable cause pickup orders. *See Furlow v. Belmar*, 52 F.4th 393 (2022). In *Furlow*, the Court held that in a situation where neither urgency nor the risk of lost evidence are present, reliance on such a process to support an arrest violates the constitution. *Id.* at 403 (holding that "Wanteds," a St. Louis system very similar to that used in St. Paul, "cannot provide a sufficient basis to justify the arrest and prolonged detention of a suspect under the Constitution."). However, the Court need not consider the application of that decision to this case because the Court concludes that even if a PC pickup can support a lawful arrest, the arrest here was unlawful.

search incident to an arrest. *See United States v. Robinson*, 414 U.S. 218, 235 (1973). However, a search incident to an *unconstitutional* arrest is, in turn, an unconstitutional search. *See, e.g.*, *United States v. Di Re*, 332 U.S. 581, 587–590 (1948) (requiring suppression of evidence gained in a search incident to an unlawful arrest); *see also Robinson*, 414 U.S. at 235 ("It is the fact of the *lawful* arrest which establishes the authority to search . . . ") (emphasis added). The Eighth Circuit has explained that an officer "clearly lack[s] authority to conduct a search incident to an arrest that he was not authorized to make." *Johnson v. Phillips*, 664 F.3d 232, 239 (8th Cir. 2011). Because the defendant officers here were not authorized, under clearly established law, to effectuate the warrantless arrest using deception, they likewise "clearly lacked authority to conduct a search" incident to that unconstitutional arrest. *Id.* As with the unlawful arrest claim, the defendant officers are not entitled to qualified immunity from Mr. Elgersma's unlawful entry and search claims.

### E.  Mr. Elgersma's Motion for Partial Summary Judgment

In addition to opposing the defendants' motion for summary judgment, Mr. Elgersma seeks affirmative summary judgment on the unconstitutional search, entry, and arrest claims he brought under 42 U.S.C. § 1983. In other words, not only does Mr. Elgersma argue that the defendant officers are not entitled to qualified immunity from the federal claims he brings against them, but Mr. Elgersma also argues that he is entitled to judgment from the Court that the defendant officers did, in fact, violate his constitutional rights.

To prevail, Mr. Elgersma must establish that there is "no genuine dispute as to any material fact" and that he is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a);

*Celotex*, 477 U.S. at 322-23. As the moving party, he bears the burden to "present evidence from which a reasonable jury could find the defendant officer has violated the plaintiff's constitutional rights." *Graham v. Connor,* 490 U.S. 386, 396 (1989). If he meets that burden, the defendant officers must present admissible evidence showing that specific facts exist creating a genuine issue for trial. *Anderson*, 477 U.S. at 256; *Wingate Cnty. Sch. Dist., No. 34*, 528 F.3d 1074, 1078-79 (8th Cir. 2008). Otherwise, Mr. Elgersma is entitled to judgment as a matter of law. For purposes of ruling on Mr. Elgersma's motion, this Court must view the facts in the light most favorable to the defendants, as the non-moving party, and it may not make credibility determinations or weigh evidence, as those are responsibilities of the jury. *Dowden*, 11 F.4th at 872.

This is the somewhat rare § 1983 case where the material facts are not in dispute. As discussed in detail above, the defendant officers came to Mr. Elgersma's apartment building without a warrant. They discussed ways to get him to open the door to his apartment, ultimately accepting the idea suggested by the building's leasing manager to have the maintenance worker knock on Mr. Elgersma's door and alert him to a fake water leak. Mr. Elgersma only opened the door due to this deception, and the video footage shows that he remained well within his apartment when they entered and arrested him.[3] The officers

---

[3] The defendants dispute how far into the apartment Mr. Elgersma was actually standing at the time of the arrest, which could be considered a meaningful factual disagreement. However, for two reasons it does not preclude partial summary judgment for the plaintiff. First, the Court has carefully reviewed the video, which belies the defendants' claims. But more importantly, even if Mr. Elgersma had been standing closer to the threshold when arrested, the arrest itself was still unlawful in light of the deception used to get him to the door, as explored in detail above.

entered his home without a warrant, his consent, or the presence of any exigent circumstances.

Although the parties generally agree on these material facts, they disagree as to what the law permits police officers to do in a situation involving these facts. But as articulated above, clearly established law applied to the undisputed facts before this Court shows that the defendant officers unlawfully arrested Mr. Elgersma, and that their entry into his apartment and search subsequent to the arrest were also unlawful. The Court finds that it is appropriate to grant Mr. Elgersma's motion for partial summary judgment because the undisputed facts show that the defendant officers violated clearly established law. Of course, the question of damages remains an open one.

### III.    State Law Claims

In addition to the constitutional claims addressed above, the defendants move for summary judgment on Mr. Elgersma's Minnesota state-law claims of battery, trespass, false arrest, and imprisonment, contending that they are entitled to official immunity from those claims. Officers in Minnesota are entitled to official immunity if they are performing discretionary acts and do not act maliciously or willfully. *See Rico v. State*, 472 N.W.2d 100, 106–07 (Minn. 1991). Discretionary duties are those that require the exercise of judgment or discretion at the operational level. *Pletan v. Gaines*, 494 N.W.2d 38, 40 (Minn.1992). The Minnesota Supreme Court has held that police officers are performing discretionary actions when they make an arrest. *Kelly v. City of Minneapolis*, 598 N.W.2d 657, 665 (Minn. 1999). Accordingly, the defendants were acting in a discretionary role when they arrived at Mr. Elgersma's apartment to arrest him, satisfying the first requirement for official immunity.

As to whether the officers were acting willfully or maliciously, willful and malicious are synonymous in the official immunity context. And in contrast to their everyday meaning, these terms in this context do not require a showing of bad faith or animus on behalf of the actor. *See Gleason v. Metro. Council Transit Operations*, 563 N.W.2d 309, 317 (Minn. Ct. App. 1997), *aff'd in part*, 582 N.W.2d 216 (Minn. 1998). The Minnesota Supreme Court has clarified that malice in this context "means nothing more than the intentional doing of a wrongful act without legal justification or excuse, or, otherwise stated, the willful violation of a known right." *Rico*, 472 N.W.2d at 107 (quotation omitted).

At the hearing, the defendants argued that official immunity in Minnesota is a subjective inquiry that takes into consideration the officers' knowledge and beliefs at the time they acted. This is only partially correct. As the Eighth Circuit recently explained, courts have "sometimes tried to draw a clear distinction between federal qualified immunity and Minnesota official immunity by describing qualified immunity as an 'objective' inquiry and official immunity for discretionary acts as a 'subjective' one." *Johnson v. City of Minneapolis*, 901 F.3d 963, 972 (8th Cir. 2018). But the Minnesota Supreme Court, as the Eighth Circuit recognized in *Johnson*, has revisited the malice standard in the official immunity inquiry, describing it "as a 'principally objective' one which focuses on the 'legal reasonableness of an official's actions.'" *Id.* (quoting *State by Beaulieu v. City of Mounds View*, 518 N.W.2d 567, 571 (Minn. 1994)). The standard for what constitutes malicious and willful conduct in Minnesota "contemplates less of a subjective inquiry into malice, which was traditionally favored at common law, and more of an objective inquiry into the legal reasonableness of an official's actions." *City of Mounds View*, 518 N.W.2d at 571; *see also State*

14

*v. Kelley*, 855 N.W.2d 269, 293 (Minn. 2014) (Stras, J.,concurring) ("[I]n official-immunity cases, we evaluate the law in effect at the time of an injury to determine whether the law clearly prohibited a public official's discretionary actions when they occurred."). This shows that over time, the official immunity inquiry in Minnesota has moved much closer to that for qualified immunity. *See Gleason*, 563 N.W.2d at 317 (finding recent cases from the Minnesota Supreme Court to "suggest[] a trend toward a clear and objective standard reflecting a very narrow inquiry" about whether the officer "acted without legal reasonableness").

Under this "principally objective" standard, the defendant officers are not entitled to official immunity. *City of Mounds View*, 518 N.W.2d at 571. For the same reasons that support denying the officers qualified immunity, their conduct objectively violated clearly established law of which a reasonable officer should have known. In other words, they "acted without legal reasonableness." *Gleason*, 563 N.W.2d at 317. But even if the subjective perspective of the officers should be afforded greater weight, two out of three officers— including the lead investigator—admitted in deposition testimony that they knew it was unlawful to enter someone's apartment without consent, exigent circumstances, or a warrant. (Pl. Mot. Summ. J. 2, 6–8, ECF No. 18.) The objective unreasonableness of their actions, taken with the fact that the majority of the group and its leader subjectively knew what they were doing expressly violated the law, weigh against summary judgment on the state-law claims.

15

## IV. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Plaintiff's partial motion for summary judgement is **GRANTED**, and Defendants' motion for summary judgment is **DENIED**.

Date: January 23, 2023

                                                  *s/Katherine Menendez*
                                                  Katherine Menendez
                                                  United States District Judge